JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:18-cv-09474-RGK-SS | Date | June 11, 2019 |
| Title | *Melissa Antablin v. Motion Picture Consumers, Local # 705, et al.* | | |

| | | |
|---|---|---|
| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) Order Re: Defendant's Motion to Dismiss [17]

## I.  INTRODUCTION

On November 7, 2018, plaintiff Melissa Antablin ("Plaintiff") filed the instant complaint against defendant Motion Picture Consumers, Local #705, International Alliance of Theatrical Stage Employees and Motion Picture Technicians, Artists and Allied Crafts ("Local 705" or "Defendant") (DE 1). Plaintiff alleges one cause of action for a violation of Sections 101(a)(2) ("§ 101(a)(2)") and 101(a)(4) ("§ 101(a)(4)") of the Labor Management Reporting and Disclosure Act ("LMRDA").

Defendant now moves to dismiss Plaintiff's complaint (DE 17). For the following reasons, the Court **GRANTS** Defendant's motion.

## II.  FACTUAL BACKGROUND

Plaintiff alleges the following:

Local 705 is a labor organization affiliated with the International Alliance of Theatrical Stage Employees and Motion Picture Technicians, Artists and Allied Crafts ("IATSE"). Plaintiff is a member of Local 705.

In the fall of 2014, Plaintiff was appointed to the position of Chair of Local 705's Education Committee ("Education Chair"). In or around October 2015, Plaintiff presented proposals for educational programs to occur in 2016 to Local 705's president, Nickolaus Brown ("Brown"), and Assistant Business Representative, Bethany Jane Bohatila ("Bohatila"). Plaintiff also presented her proposals to the Executive Board on November 7, 2015.

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-09474-RGK-SS | Date | June 11, 2019 |
|---|---|---|---|
| Title | *Melissa Antablin v. Motion Picture Consumers, Local # 705, et al.* | | |

  Thereafter, Plaintiff prepared a proposal to create a funded position for an educational program director to carry out the programs she proposed as Education Chair. Although the Executive Board regularly allows members to address the Board at its meetings, Bohatila insisted that she, rather than Plaintiff, present the proposal to the Board for review at their December 12, 2015 meeting. In preparation, Plaintiff also submitted a proposed budget that stated that the Executive Board had previously approved money for the production, filming, and editing of educational videos.

  Because Bohatila would not allow her to present the proposal to the Board herself, on January 5, 2016, Plaintiff wrote a letter withdrawing her proposal. In the letter, Plaintiff told the Board she planned to submit a new proposal at the Board's February 6, 2016 meeting. On February 1, 2016, Plaintiff submitted her new proposal for the paid educational program position. On February 3, 2016, Plaintiff gave Bohatila a message that she wished to publish in Local 705's weekly email to its members, encouraging members to enroll in upcoming educational classes. Bohatila failed to publish Plaintiff's message in the February 5, 2016 email. Instead, Bohatila published different information about the upcoming educational classes.

  On February 5, 2015, Plaintiff told Brown that she would present her proposal to the Board at their meeting the next day. Bohatila then informed Plaintiff that Board meetings were private, and that she could not attend. Bohatila offered to present Plaintiff's proposal in her stead. Another Board member, Nancy Grossi ("Grossi"), then informed Plaintiff that Bohatila was wrong—Plaintiff *was* permitted to attend the meeting, as they were not private. Sometime thereafter, Bohatila informed Plaintiff that she no longer planned to present her proposal.

  On February 6, 2015, Plaintiff went to the Local 705 offices prepared to present the proposal to the Board herself. As she attempted to enter the meeting room, Business Representative Bob Iannacone ("Iannacone") slammed the door in her face and held it to prevent her from entering. After Plaintiff continued to try to enter, Iannacone opened the door, grabbed Plaintiff, and pushed her against the walkway railing. Iannacone and Brown then blocked entrance into the meeting room. Brown told Plaintiff that he would not present her proposal at the meeting. While the members of the Board were discussing whether to call the police, Plaintiff entered the meeting room and left a copy of her proposal on the boardroom table.

  At 5:30 p.m. that night, Plaintiff filed a police report against Iannacone for assault. Local 705 became aware of the report shortly thereafter. On February 8, 2016, Brown removed Plaintiff from her position as Education Chair without "cause or reason." (Pl.'s Compl. ¶ 26, ECF No. 1.) Plaintiff believes that Brown removed her from her position in retaliation for filing the police report and trying to attend the Board meeting.

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-09474-RGK-SS | Date | June 11, 2019 |
|---|---|---|---|
| Title | *Melissa Antablin v. Motion Picture Consumers, Local # 705, et al.* | | |

Before and after the events on February 6, 2015, various members of the Executive Board falsely informed others that Plaintiff's proposal involved paying Plaintiff retroactively for her past volunteer services as Education Chair. In addition, Brown and/or Iannacone have at various times falsely asserted that Plaintiff was offered a paid position that she turned down.

On April 2, 2016, Plaintiff filed charges against Iannacone, Brown, Bohatila, and assorted members of the Executive Board pursuant to article 14 of Local 705's constitution and bylaws. A trial board of five members was elected to hear the charges, but two of those members were close friends of the individuals charged. Another member of the trial board was later appointed by Brown to an alternate executive board member position, which Plaintiff believes was a reward for voting against Plaintiff. The trial board dismissed Plaintiff's charges on July 9, 2016.[1]

On August 8, 2016, Plaintiff appealed the trial board's dismissal with the President of IATSE. Although the constitution requires Local 705 to serve Plaintiff with its response, Plaintiff never received a copy. But after Local 705 falsely claimed that Plaintiff had sought payment for her services as a volunteer, IATSE denied her appeal on December 7, 2016.

In December 2016, Plaintiff filed a complaint with the United States Department of Labor. Local 705 was aware of her complaint. Since February 2016, Plaintiff has requested copies of the audio tapes from the Executive Board meetings, but her requests have been denied.

After Plaintiff filed her police report on February 6, 2015, Plaintiff has suffered a reduction in and loss of work. Specifically, Plaintiff cites nine instances in which she was either hired for work on various sets temporarily and subsequently released or she was encouraged to send her resume and then not hired. (*See* Pl.'s Compl. ¶ 51.) In each case, Plaintiff was given varying reasons for her discharge, including insufficient costume work or lack of available costume positions.

Plaintiff believes, however, that Local 705 learned she was working on each production, then "took actions causing [Plaintiff] to lose work or employment." (*Id.* ¶ 52.) "Local 705 has blackballed [her] and prevented [her] from working or continuing to work as a costumer." (*Id.*) Specifically, Local 705 "was aware of her employment at the various employers" and "her discharge from and loss of work at such employments followed within a few days of when Local 705 became aware of her employment."

---

[1] Plaintiff alleges that the trial board improperly dismissed her charges because the board falsely believed that she filed her charges on April 6, 2016.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-09474-RGK-SS | Date | June 11, 2019 |
|---|---|---|---|
| Title | *Melissa Antablin v. Motion Picture Consumers, Local # 705, et al.* | | |

(*Id.* ¶ 53.) And in November 2017, in an unrelated dispute about union dues, Local 705 stated that it "had been receiving reports that Plaintiff had been working." (*Id.*)

Moreover, Local 705 has taken various hostile, retaliatory, and discriminatory actions against Plaintiff and persons who appear to support her, including falsely accusing her of seeking payment for her past services as a volunteer and spending unapproved funds for videography services. Plaintiff's comments on Local 705's electronic forums have been removed, while comments favorable to the new Education Chair have remained. Finally, other members of Local 705 who disagree with its officers have received negative treatment or have been reprimanded for posting comments on forums favorable to Plaintiff.

Because of Local 705's actions, Plaintiff has lost income and other economic benefits, has suffered a harmed reputation, and has experienced physical illness, emotional distress, humiliation, anxiety, worry, and sleeplessness.

### III.   JUDICIAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff alleges enough facts to draw a reasonable inference that the defendant is liable. *Id.* While a plaintiff need not provide detailed factual allegations, he must provide more than mere legal conclusions. *Twombly*, 550 U.S. at 555.

When ruling on a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion, the court generally must accept the allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). However, the court need not accept as true "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Id.* at 679 (citing Fed. Rule Civ. P. 8(a)(2)).

### IV.   DISCUSSION

Plaintiff alleges a claim for relief under §§ 101(a)(2) and 101(a)(4) of the LMRDA. 29 U.S.C. §§ 411(a)(2), (4). Section 101(a)(2) protects union members' rights to free speech, while § 101(a)(4) protects members' right to file suit. Defendant moves to dismiss Plaintiff's claim on three grounds: (1) preemption; (2) statute of limitations; and (3) failure to state a claim pursuant to Rule 12(b)(6).

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:18-cv-09474-RGK-SS | Date | June 11, 2019 |
|---|---|---|---|
| Title | *Melissa Antablin v. Motion Picture Consumers, Local # 705, et al.* | | |

### A. <u>Preemption</u>

First, Defendant argues that Plaintiff's LMRDA claim is essentially a claim for retaliation under the National Labor Relations Act ("NLRA"). *See* 29 U.S.C. §§ 157–58. And because claims that are arguably covered by the NLRA are preempted pursuant to the *Garmon* doctrine, Plaintiff's LMRDA claims are also preempted. *See San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244–45 (1959) (holding that claims subject to §§ 7 and 8 of the NLRA are exclusively adjudicated by the National Labor Relations Board and thus preempted).

But Plaintiff here asserts a claim under two provisions of the LMRDA, and the LMRDA grants jurisdiction to federal district courts for claims arising out of its provisions. 29 U.S.C. § 412. Even though LMRDA claims may also attach liability for unfair labor practices under the NLRA, an action brought under the LMRDA "is not preempted by an unfair labor charge" that may also be heard before the National Labor Relations Board. *Benda v. Grand Lodge of Intern. Ass'n of Machinists and Aerospace Workers*, 584 F.2d 308, 313–14 (9th Cir. 1978); *see also* 29 U.S.C. § 523(a) (providing that the LMRDA is a nonexclusive statutory remedy that cannot be preempted by other analogous rights); *Int'l Broth. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, AFL-CIO v. Hardeman*, 401 U.S. 233, 238–39 (1971) (explaining that the congressional intent when referring LMRDA claims to federal district courts supersedes NLRA preemption when there is no danger of conflicting statutory interpretations).

Accordingly, Plaintiff's claim is not preempted.

### B. <u>Statute of Limitations</u>

Defendant next argues that Plaintiff's claim is barred by the statute of limitations. As an initial matter, both Plaintiff and Defendant agree that there is a two-year statute of limitations on LMRDA claims. *See Reed v. United Transp. Union*, 488 U.S. 319, 323 (1989); Cal. Code Civ. Proc. § 335.1.

But Defendant does not argue that Plaintiff's complaint is barred by the two-year statute of limitations. Instead, Defendant argues that because Plaintiff's claims are more appropriately governed by the NLRA, the NLRA's six-month statute of limitations bars her claims. *See* 29 U.S.C. § 160(b). But as discussed above, the Court will not reconstrue Plaintiff's complaint as stating a claim for relief under the NLRA when on the face of the complaint, Plaintiff alleges two violations of the LMRDA. As a result, Plaintiff's complaint is timely.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-09474-RGK-SS | Date | June 11, 2019 |
|---|---|---|---|
| Title | *Melissa Antablin v. Motion Picture Consumers, Local # 705, et al.* | | |

**C.     Failure to State a Claim**

Finally, Defendant argues that Plaintiff fails to state a claim under Rule 12(b)(6) because she fails to allege causation.

To state a cause of action for a violation of § 101(a)(2), the plaintiff must allege: (1) that the plaintiff exercised her right to oppose union policies; (2) the plaintiff was subject to retaliatory action; and (3) the retaliatory action was a "direct result" of the plaintiff's disagreement with the union leadership. *Casumpang v. Int'l Longshoremen's and Warehousemen's Union, Local 142*, 269 F.3d 1042, 1058 (9th Cir. 2001) (hereinafter, "*Casumpang*"); 29 U.S.C. § 411(a)(2). Similarly, § 101(a)(4) prohibits retaliatory action taken against a union member for bringing suit. *Phillips v. Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers, Local 118*, 556 F.2d 939, 942 (9th Cir. 1977); 29 U.S.C. § 411(a)(2).[2] The causal link between the plaintiff's protected activities and the adverse employment actions may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities, or the proximity in time between protected activity and the retaliatory action. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987). In *Casumpang*, where three months passed between the plaintiff's protected speech and the date of his union suspension, the Ninth Circuit found sufficient circumstantial evidence to establish that the union suspension was caused by retaliation for his protected speech. 269 F.3d 1042, 1058 (9th Cir. 2001).

Here, Plaintiff's theory of causation is more tenuous. Plaintiff argues that the pattern of being promised employment on sets by various third-party employers and then discharged days later is circumstantial evidence that Defendant caused her loss of employment. Specifically, Plaintiff asserts that because employers are required to report to Defendant when union members gain employment, and she was discharged days after her jobs began, the timing suggests that Defendant took actions causing her to lose work after learning that she was employed.

But Plaintiff's other factual allegations tell a more plausible story. For example, Plaintiff alleges that in November 2016, "after being hired to work on a film *A Wrinkle in Time*, and after working several days on this film, [Plaintiff] was told that there was no work for her because the number of costumers had been reduced." (Pl.'s Compl. ¶ 51(a).) Although Plaintiff then alleges that the rationale "was false," because "the number of costumers had not been reduced," Plaintiff alleges nothing that indicates that Local 705 had a hand in her discharge. Similarly, in September 2017, Plaintiff "was hired to work on a television production *Fresh Off the Boat* for an initial period of three days." (*Id.* ¶ 51(d).)

---

[2] Both Plaintiff and Defendant apply the causation element of § 101(a)(2) to § 101(a)(4).

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-09474-RGK-SS | Date | June 11, 2019 |
|---|---|---|---|
| Title | *Melissa Antablin v. Motion Picture Consumers, Local # 705, et al.* | | |

But after working only one day, "she was told she would be let go." (*Id.*) Plaintiff "convinced the supervisors to let her work one more day," but she was let go again after the second day. (*Id.*) As she left, Plaintiff was told that she would get additional work if it became available, but the supervisors did not contact her again. In a third example, Plaintiff alleges that on two occasions in November 2017, she was invited to send her resume for work on two productions, but she was not offered either job. Each of these allegations suggest that Plaintiff was either not hired based on her resume or that she was discharged for the reasons the employers gave. If the employers were indeed lying about costume job availability, it is more plausible that they chose to discharge her for other reasons after supervising a day or two of her work.

In short, Plaintiff's allegations do not plausibly allege that Defendant caused her any loss of employment in retaliation for her protected activity. For example, Plaintiff does not allege that any of her employers spoke to Defendant between the time that she was hired and discharged, or that her employers knew anything about her protected union activity. More broadly, Plaintiff alleges no facts indicating that Defendant had any influence on her employers at all. Instead, Plaintiff alleges that she was given several reasons for her discontinued employment—*i.e.* she was let go, there were fewer costume positions available than expected, or the production no longer needed her services. On other occasions, she was simply not hired or was hired temporarily and not asked to return. Plaintiff notably *does not* allege that she was qualified for the positions or that her work quality met expectations; in fact, Plaintiff does not allege any facts tending to show that there was any reason to hire or retain her on any of the productions in the first place.

Conceding that her causation theory is attenuated, Plaintiff alleges several supporting pieces of circumstantial evidence. First, as discussed above, Plaintiff alleges that her employers were required to report her employment to Defendant, per union rules. From this fact, Plaintiff asks the Court to presume that her employers reported her employment to Defendant shortly after hiring her, but then after the employers gave Plaintiff one or two days of work, Defendant then said or did something to encourage the employers to promptly fire her and lie about their rationale. The timing, Plaintiff argues, is inherently suspect—because the job-related retaliation "occurred shortly after" Defendant "learned or *would have learned*" of her employment, it follows that Defendant caused her to lose each job. (Opp'n 14:14–16, ECF No. 22.) But Plaintiff does not allege that Defendant learned of her employment or took any specific actions Defendant to encourage employers to fire her, and Plaintiff does not allege that the employers fired her after they spoke with Defendant.[3] Accordingly, taking Plaintiff's allegations as true,

---

[3] To be sure, Plaintiff alleges that in 2017, Defendant knew Plaintiff had been employed at some point. But knowledge that Plaintiff was employed is not the same as knowledge that Plaintiff was employed the day she began each job. And Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:18-cv-09474-RGK-SS | Date | June 11, 2019 |
|---|---|---|---|
| Title | *Melissa Antablin v. Motion Picture Consumers, Local # 705, et al.* | | |

Plaintiff's allegations do not permit the Court to infer more than the mere *possibility* of causation. *Iqbal*, 556 U.S. at 679.

As further circumstantial evidence of causation, Plaintiff alleges Defendant's hostility towards her or her supporters after her protected activity and Defendant's use of false statements against Plaintiff "apparently designed to damage her reputation among members." (Opp'n 15:2–8.) But while these allegations may help Plaintiff ultimately show that she was engaged in protected union activity or that she was subject to retaliatory action,[4] they do not help establish causation.

Because Plaintiff does not plausibly allege causation, Plaintiff's claim fails to state a claim for relief under either § 101(a)(2) and § 101(a)(4).

### D. Leave to Amend

"The grant or denial of an opportunity to amend is within the discretion of the district court." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Although a district court should grant the plaintiff leave to amend" if the pleading deficiencies "can *possibly be cured* by additional factual allegations, [d]ismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (internal quotation marks omitted) (emphasis added) (citing *Zixiang Li v. Kerry*, 710 F.3d 995, 997 (9th Cir. 2013)). Here, the Court finds that based on the allegations in the complaint, no additional facts exist that would cure its deficiencies. Accordingly, the Court declines to grant Plaintiff leave to amend.

---

does not even allege that Defendant knew she was employed on the jobs she was discharged from; only that Defendant knew in 2017 that Plaintiff had been employed *somewhere*.

[4] Plaintiff concedes that many of the "retaliatory actions" alleged in her complaint are not legally actionable, such as the denial of meeting recordings or her removal from her post as Education Chair. Instead, these incidents are merely alleged as circumstantial evidence of Defendant's "motive." (Opp'n 16–20.)

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-09474-RGK-SS | Date | June 11, 2019 |
|---|---|---|---|
| Title | *Melissa Antablin v. Motion Picture Consumers, Local # 705, et al.* | | |

### V.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss **with prejudice**.

**IT IS SO ORDERED.**

:

Initials of Preparer