**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 2 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MELISSA ANTABLIN,<br><br>        Plaintiff-Appellant,<br><br> v.<br><br>MOTION PICTURE COSTUMERS, LOCAL NO. 705, International Alliance of Theatrical Stage Employees and Motion Picture Technicians, Artists and Allied Crafts,<br><br>        Defendant-Appellee. | No.  21-56349<br><br>D.C. Nos.<br>2:18-cv-09474-MCS-AS<br>2:20-cv-08762-MCS-AS<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
Mark C. Scarsi, District Judge, Presiding

Argued and Submitted November 17, 2022
Pasadena, California

Before: WARDLAW and W. FLETCHER, Circuit Judges, and KENNELLY,** District Judge.

---

    \*     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

    \*\*    The Honorable Matthew F. Kennelly, United States District Judge for the Northern District of Illinois, sitting by designation.

Melissa Antablin—a professional costumer and member of Motion Picture Costumers Local 705—sued Local 705, alleging it retaliated against her for a dispute she had with union officials by blocking her employment on several productions; violated its duty of fair representation by allowing the hiring of non-union costumers for jobs to which she applied; and refused to produce union records she claimed she was entitled to obtain under federal and state law. The district court granted Local 705's motion for summary judgment on Antablin's claims and denied her cross motion for summary judgment. We have jurisdiction under 28 U.S.C. § 1291. We affirm in part and reverse in part.

1.   **Retaliation claim**

Antablin asserted her retaliation claim under section 101(a)(2) and (4) of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(2), (4). The district court partially dismissed the claim as time-barred and granted summary judgment for the union on the rest of the claim. We assume for purposes of discussion, however, that Antablin's claim was timely in its entirety, because summary judgment was appropriately granted against her on the merits of her claim.

Specifically, the district court did not err in finding that there was no evidence that the union took any action to restrict or influence Antablin's employment on the jobs she cited in her retaliation claim. Antablin identified some arguable inconsistencies in the employers' renditions of their dealings with her, but even if

2

those explanations were disbelieved it would not amount to evidence of any retaliatory action *by the union*. More particularly, Antablin offered no evidence that the union was aware of her availability to work on the particular productions in question. Nor did she offer evidence that anyone connected with the union reached out to any of these employers about her in any way; the only evidence was to the contrary. Without evidence of retaliatory conduct by the union, Antablin's claim could not succeed. *See Casumpang v. Int'l Longshoreman's and Warehousemen's Union, Local 142*, 269 F.3d 1042, 1058 (9th Cir. 2001) (explaining that plaintiff must show she was subjected to retaliatory action to state a cause of action for a violation of section 101(a)(2)).

### 2. Duty of Fair Representation Claim.[1]

Antablin's second claim is that the union violated its duty of fair representation by authorizing the hiring of non-union costumers on certain jobs even though she, as a union member, was available for hiring. The district court held that no duty of fair representation existed because the union did not operate an "exclusive" hiring hall. We conclude that genuine factual disputes preclude summary judgment on this claim.

---

[1] The district court suggested that Antablin had "largely conceded" this issue but then addressed it on the merits, so we will do the same.

The Supreme Court has held that a union's operation of an exclusive hiring hall gives rise to a duty of fair representation (DFR) on the part of the union to its members. *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 88–89 (1989). "Exclusive" in this context is "a term of art denoting the degree to which hiring is reserved to the union hiring hall." *Id.* at 71 n.1.

There is evidence that would permit a reasonable fact finder to determine that the system established by the collective bargaining agreement (CBA) with Local 705 and maintained by the union—called the Industry Experience Roster (IER)—was sufficiently exclusive to trigger the union's DFR vis-à-vis its members. Paragraph 68(c) of the CBA states that "preference of employment in hiring and rehiring shall be given" by a producer to qualified persons on the IER, and it may be read to allow the producer to go outside the IER only if there it includes insufficient qualified workers to meet the producer's requirements. The CBA also includes a grievance process applicable when a producer hires without regard to the IER, including a remedy that would permit a grievance arbitrator to order a producer to "forthwith employ" a person on the IER and award backpay. Though the IER appears to have included both union and non-union costumers, a reasonable fact finder, when reviewing the evidence just discussed, could nonetheless infer that the arrangement in the CBA was effectively an exclusive hiring hall. *See, e.g., Int'l Bhd. of Teamsters Local 492 (Fire and Ice Prods., Inc.)*, 369 N.L.R.B. No. 75, slip op. at 2-4, 7-8 (2020)

(quoting *Plumbers & Pipe Fitters*, 50 F.3d 29, 32 (D.C. Cir. 1995)) (finding an Industry Experience Roster constituted an exclusive hiring hall because producers were required to exhaust the Roster or invoke an exception before hiring off-Roster, and failing to do so could lead to a grievance process).[2]

To the extent Local 705's actions related to its operation of an exclusive hiring hall, it owed Antablin not simply a duty of fair representation, but a heightened duty of fair dealing that required it to operate by "reference to objective criteria." *Lucas v. N.L.R.B.*, 333 F.3d 927, 935 (9th Cir. 2003) (citation omitted). Under *Lucas*, when a union engages in conduct that "causes a worker to be fired or prevents a worker from being hired, the burden shifts to the union to justify its actions." *Id.* at 934. The record here includes evidence that would permit a finding that the union routinely granted waivers to producers that permitted them to hire without regard to the IER. If so, then the heightened duty under *Lucas* would apply. Because Local 705 contends that it is only subject to the lower, more deferential standard from *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65 (1991), it does not address the shifted burden under *Lucas*. That would require Local 705 to establish that, in granting waivers, it "acted according to a valid union security clause or that [its] action was

---

[2] That Local 705 outsourced day-to-day administration of the IER may be a factor for a fact finder to consider in determining whether the CBA established an exclusive hiring hall, but on the record before us there is no basis to consider this a dispositive factor.

necessary to the effective performance of its function of representing its constituency." *Lucas*, 333 F.3d at 935 (citations and internal quotation marks omitted). Because these issues remain unresolved, summary judgment is not appropriate.

For these reasons, we reverse the district court's grant of summary judgment to Local 705 on Antablin's duty of fair representation claim and remand for further proceedings on that claim.

### 3. Inspection Claims

The district court found Antablin's record-inspection claims moot because, during the litigation, she received the records she had requested. A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). In deciding mootness, "the question is whether there can be *any* effective relief." *Nw. Envtl. Defense Ctr. v. Gordon*, 849 F.2d 1241, 1245 (9th Cir. 1988) (citations and internal quotations marks omitted). A case is moot when "there is no reasonable expectation" that the alleged violation will recur. *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953).

Antablin's claims, which arise under both federal and state law, involve the denial of her requests to inspect specific documents. Because she has received those documents from the union, she has no claim left to pursue. In other words, there is

no effective relief a court can provide, and the alleged violation—which is specific to her—cannot recur. The exception to mootness for some cases involving voluntary cessation of a practice does not apply here, as there are no "old ways" for the union to return to. *See, e.g.*, *Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000) (referring to "a challenged practice" that could "reasonably be expected to start up again" and concern that a defendant could "return to his old ways" after voluntary ceasing the challenged conduct). Antablin attempts to recharacterize her claim as challenging a larger union practice of denying inspection requests, but she has offered no evidence that would suggest there is such a practice. Nor can the union's interpretation of the relevant statutes as not obligating it to provide members with copies of records (as opposed to inspecting them)—which seemingly only arose as a defense to this litigation—warrant keeping the case alive even after Antablin received the documents she requested.

For these reasons, the district court did not err in finding that Antablin's inspection claims were moot.

**AFFIRMED in part and REVERSED AND REMANDED in part.** Each party will bear its own costs in this Court.